IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| STEVEN CLASPILLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-03179-CV-S-GAF-SSA |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Presently before the Court is Plaintiff Steven Claspille's ("Plaintiff") Social Security Brief, requesting this Court reverse the Administrative decision that Plaintiff was not under a disability as defined under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 *et seq.* (Doc. # 15). Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration (the "Commissioner" or "Defendant"), opposes. (Doc. # 21). For the reasons stated below, the Commissioner's decision is AFFIRMED.

## DISCUSSION

### I. FACTS

On December 19, 2011, Plaintiff made an application for disability insurance benefits under Title II of the Act, alleging disability beginning February 25, 2011. (Administrative Court Transcript ("Tr.") at 11). Plaintiff's application was initially denied on March 28, 2012. (*Id.*). On May 28, 2013, following a hearing, an administrative law judge (the "ALJ") found that Plaintiff was not under a disability as defined in the Act. (*Id.* at 11, 21).

In his decision, the ALJ found that Plaintiff had severe impairments of diabetes mellitus with resulting neuropathy and obesity. (*Id.* at 13). However, the ALJ found that Plaintiff did not

1

have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 15). The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform "sedentary work" as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). (*Id.*). The ALJ stated:

> [Plaintiff] can occasionally climb ramps and stairs, but he is unable to climb ladders, ropes or scaffolds. [Plaintiff] can occasionally stoop, kneel, and crouch; however, he is unable to balance or crawl. [Plaintiff] must avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery. He would further need to avoid concentrated exposure to vibration, extreme heat, extreme cold, and humidity.

(*Id.*). With the assistance of vocational expert testimony, the ALJ found that Plaintiff's impairments would not preclude him from performing work that exists in significant numbers in the national economy, including work as an order clerk or addresser. (*Id.* at 20). Consequently, the ALJ found that Plaintiff was not disabled. (*Id.*).

Thereafter, the Appeals Council of the Social Security Administration denied Plaintiff's request for review. (*Id.* at 1). Thus, the ALJ's decision stands as the "final decision" of the Commissioner, subject to judicial review on appeal herein.

## II. LEGAL STANDARD

The standard of appellate review of the Commissioner's decision is limited to a determination of whether the decision is supported by "substantial evidence on the record as a whole." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "'Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision.'" *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008) (quoting *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007)). Evidence that both supports and detracts from the Commissioner's decision should be considered, and an administrative decision is not subject to

2

reversal simply because some evidence may support the opposite conclusion.  *See Finch*, 547 F.3d at 935.

A reviewing court should disturb an ALJ's decision only if it falls outside the available "zone of choice," and a decision is not outside that zone of choice simply because the court may have reached a different conclusion had the court been the fact finder in the first instance. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011); *see McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").  The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions of the Social Security Administration."  *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

### III.  ANALYSIS[1]

To establish entitlement to benefits, Plaintiff must show that he is unable to engage in any substantial gainful activity due to a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d).  Plaintiff has not met this burden.

Plaintiff argues that the ALJ committed error by failing to order a consultative examination to determine the severity and extent of Plaintiff's diabetic neuropathy.  (Doc. # 15, p. 23).  In particular, Plaintiff argues the ALJ should have developed the record further by ordering a consultative examination in which electromyography or nerve conduction testing

---

[1] Upon review of the record and the law, Defendant's position is found to be persuasive.  Much of the Defendant's brief is adopted without quotation designated.

3

could have been performed.  (*Id.* at 26).

"[T]he ALJ bears a responsibility to develop the record fairly and fully."  *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004).  However, "[t]he ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."  *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994).  Thus, "[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision."  *Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001) (quoting *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir. 1992)) (internal quotation marks omitted).  However, it is Plaintiff's responsibility to provide medical evidence to show that he is disabled.  *See* 20 C.F.R. § 404.1515; *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) ("Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment.").  Thus, "the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record."  *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994).

The record in this case was sufficiently developed for the ALJ to make an informed decision.  Notably, the record contains hundreds of pages of Plaintiff's physical and mental health treatment notes.  (*See* Tr.).  Moreover, following the hearing, the ALJ left the record open for twenty-one days to allow Plaintiff to submit additional medical evidence.  (*Id.* at 21, 76).  Plaintiff claims he tried to obtain a statement during this period from his treating physician regarding the necessity of Plaintiff using a cane, but that his doctor was unwilling to provide anything beyond Plaintiff's medical records.  (Doc. # 15, pp. 25-26).  Plaintiff did submit an employer questionnaire (Tr. at 164-166), but did not submit any additional medical evidence to the ALJ, nor request additional time to obtain any additional evidence.  (*See id.*).  Further,

4

Plaintiff submitted additional medical records to the Appeals Council, and the Appeals Council considered this evidence, but found that it did not provide a basis to change the ALJ's decision. (*Id.* at 1-2, 5, 423-26). This evidence included a nerve conduction study of the lower extremities that showed moderate generalized polyneuropathy but no evidence of radiculopathy, myopathy, or neuropathy. (*Id.* at 425).

As stated above, the record contained sufficient evidence to permit the ALJ to reach an informed decision. For example, while Plaintiff testified that he has numbness in his hands and difficulty grasping and holding objects, he also testified that he could use a pen or pencil to write for up to ten minutes. (*Id.* at 16, 36, 59-60). The ALJ also noted that Plaintiff has a driver's license and drove to town once a week. (*Id.* at 16, 35). In March of 2012, a doctor treating Plaintiff found Plaintiff had normal motor strength, normal sensation, normal ranges of motion, and normal fine motor skills, including writing, buttoning, unbuttoning, using zippers, gripping, turning door handles and knobs, grasping, and shaking hands. (*Id.* at 241). Other than a single reference to tingling of the hands in April of 2012 (*id.* at 344), Plaintiff's doctor did not indicate any symptoms in Plaintiff's upper extremities during examinations; hospital records and treatment records from that doctor's nurse also did not indicate clinical signs or findings of upper extremity abnormalities. (*See id.* at 230-35, 327-30, 338-40, 346-49, 355-56, 368-69, 379-80, 384-86, 389-91, 394-401, 409-12, 418-22).

In discussing Plaintiff's alleged lower extremity neuropathic symptoms, the ALJ noted that an ultrasound examination revealed normal ankle-brachial indices with no evidence of stenosis or claudication. (*Id.* at 17, 325). Plaintiff was treated with Neurontin for symptoms of neuropathy and some examinations revealed generalized burning of the feet or diminished sensations. (*Id.* at 323-24, 342-44, 367-68). However, as the ALJ noted, other examinations

failed to show similar neuropathic symptoms. (*Id.* at 17). For instance, neurological examinations were normal in September of 2012 and March of 2012 (*id.* at 232, 241), the nurse's progress notes failed to indicate remarkable neurological findings (*id.* at 384-86, 389-91, 394-401, 409-12, 418-22), the doctor's examinations in February, May, and October of 2012 were benign (*id.* at 328-29, 338, 347, 356), Plaintiff had a normal physical examination in February of 2013 (*id.* at 379-82), and examination findings indicated Plaintiff retained the ability to ambulate normally without assistance (*id.* at 240, 329, 338, 344, 347, 356, 380).

Plaintiff's activities of daily living further support the ALJ's findings and indicate there was no need to order a consultative examination. For example, Plaintiff reported in March of 2012 that he had recently painted a room in his home, which, as the ALJ noted, "would require fine and gross dexterity of the hands as well as considerable amounts of standing." (*Id.* at 18, 240). Plaintiff also reported that he was independent with activities of daily living and reported being able to perform household chores. (*Id.* at 240). Plaintiff indicated that he cared for animals, took walks, worked on hobbies, prepared meals, drove, mowed and trimmed his yard, shopped, went fishing, hunting, and camping, read, attended family gatherings, played video games, worked puzzles, and used a computer. (*Id.* at 180-90).

Based on his evaluation of the entire record, the ALJ determined that Plaintiff retained the RFC to perform the range of "sedentary work." (*Id.*). This RFC adequately accounts for the credible limitations resulting from Plaintiff's medical impairments. Because the record contained substantial evidence to permit the ALJ to reach an informed decision, a consultative examination was not necessary. *See Haley*, 258 F.3d at 749-50 (finding "the ALJ did not err in failing to send the claimant for a consultative examination" because "there was substantial evidence in the record to allow the ALJ to make an informed decision.").

6

## **CONCLUSION**

The ALJ's decision is supported by substantial evidence on the record as a whole, including a thorough discussion of Plaintiff's medical records. There is substantial evidence on the record that the ALJ properly formulated Plaintiff's RFC, and thus did not commit error in not ordering a consultative examination. Accordingly, for these reasons and the reasons set forth above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

/s/ Gary A. Fenner
Gary A. Fenner, Judge
United States District Court

DATED: May 7, 2015.